UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BENJAMIN EVANS, | ) | CASE NO. 5:16CV1113 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| NANCY A. BERRYHILL[1], | ) | |
| ACTING COMMISSIONER OF | ) | REPORT AND RECOMMENDATION |
| SOCIAL SECURITY, | ) | OF MAGISTRATE JUDGE |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Benjamin Evans ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security ("Defendant") denying his application for Supplemental Security Income ("SSI"). ECF Dkt. #2. In his brief on the merits, filed on August 12, 2016, Plaintiff asserts that the administrative law judge's ("ALJ") decision to discount a portion of the medical expert's opinion is not supported by substantial evidence. ECF Dkt. #11 at 1, 14- 25. Defendant filed a response brief on October 25, 2016. ECF Dkt. #14. On November 8, 2016, Plaintiff filed a reply brief. ECF Dkt. #15. For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

## I.    PROCEDURAL HISTORY

On May 31, 2012, Plaintiff filed an application for SSI, alleging disability beginning December 1, 2010.[2] ECF Dkt. #10 ("Tr.") at 9.[3] Plaintiff's claim was denied initially and upon

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]Plaintiff's application for SSI was completed on July 24, 2012. ECF Dkt. #10 at 175.

[3]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than

reconsideration. *Id.* After the denial, Plaintiff requested a hearing, which was held on June 12, 2014. *Id.* at 29. On November 13, 2014, the ALJ issued a decision denying Plaintiff's claim. *Id.* at 6. Subsequently, the Appeals Council denied Plaintiff's request for review. *Id.* at 1. Accordingly, the November 13, 2014, decision issued by the ALJ stands as the final decision.

Plaintiff filed the instant suit seeking review of the ALJ's November 13, 2014, decision on May 10, 2016. ECF Dkt. #2. On August 12, 2016, Plaintiff filed his brief on the merits. ECF Dkt. #11. Defendant filed a response brief on October 25, 2016. ECF Dkt. #14. On November 8, 2016, Plaintiff filed a reply brief. ECF Dkt. #15.

## II. RELEVANT TESTIMONIAL EVIDENCE

### A. Testimonial Evidence

At the hearing held on June 12, 2014, the ALJ indicated that, in addition to Plaintiff, a vocational expert ("VE") and two impartial medical experts would be testifying.[4] Tr. at 31-33. The ALJ first examined Victoria Eskinazi, M.D., an impartial medical expert. *Id.* at 37-33-40, 61-67. Dr. Eskinazi testified that she had read the file regarding Plaintiff's medical condition, and noted that his psychological impairments were "far more serious" than the physical impairments and that the discussion of Plaintiff's psychological impairments will be left to Larry Cesare, Psy.D., the impartial psychological medical expert. *Id.* at 38. Continuing, Dr. Eskinazi testified that Plaintiff suffered from: multiple abdominal surgical procedures, mostly from self-inflicted trauma and non-compliance with the prescribed medical regimen; moderate obesity;

---

the page number assigned when the Transcript was filed in the CM/ECF system.

[4]Plaintiff alleges that the ALJ erred when evaluating the opinion evidence provided by Larry Cesare, Psy.D., the impartial psychological medical expert. As Plaintiff's claimed errors are related solely to the manner in which the ALJ evaluated this opinion evidence, Plaintiff limits his recitation of the evidence to the testimonial evidence and indicates that the lengthy medical records presented in this case need not be discussed. *See* ECF Dkt. #11 at 12. Defendant also states that her discussion is limited to the facts pertaining to the testimonial evidence provided by Dr. Cesare, however, Defendant does briefly address other opinion evidence pertaining to Plaintiff's mental impairments that was cited by the ALJ. ECF Dkt. #14 at 3, 7-8. A review of the medical records contained in the Transcript supports the parties choice to limit the discussion of the evidence in this case to the testimonial evidence for the purpose of review of the ALJ's decision. As such, the undersigned will address the testimonial evidence discussed by Plaintiff and Defendant, and include a brief summary of the other opinion evidence pertaining to Plaintiff's mental impairments, as discussed by Defendant.

narcotic and polysubstance abuse, including "cocaine, tobacco, amphetamine, etcetera"; and borderline hypertension and hyperlipidemia. *Id.* at 38-39.

Dr. Eskinazi testified that none of Plaintiff's impairments met a listing, and that he "probably" did not have exertional limitations, but that Plaintiff's residual functional capacity ("RFC") was speculative because he had not "allowed himself to have a period of stability." Tr. at 39-40. Nonetheless, Dr. Eskinazi testified that Plaintiff would likely have no restrictions or, at most, be restricted to a medium level of exertion. *Id.* at 40. Dr. Eskinazi then testified that Plaintiff should have the following limitations: no use of ropes, ladders, and/or scaffolds due to his obesity, and no use of narcotics or medications; occasional squatting due to his abdominal wound; frequent stooping, climbing stairs, and crawling; and "limited" kneeling and balancing. *Id.* Additionally, Dr. Eskinazi stated that Plaintiff should avoid extremes of heat, hazards, unprotected heights, machines, and commercial driving, "again based on his extensive narcotic use." *Id.*

The ALJ then examined Dr. Cesare. Tr. at 41-67. Dr. Cesare testified that he had reviewed Plaintiff's medical record and that there was sufficient evidence to establish a clinical diagnostic picture of Plaintiff. *Id.* at 41-42. Continuing, Dr. Cesare noted that there was not a formal mental RFC assessment or other systematic evaluation of functioning in the areas relevant to the listings, so he was left to infer levels of impairment in some of these areas. *Id.* at 24. Dr. Cesare indicated that the evidence he reviewed supported the presence of "a substance induced mood disorder, polysubstance dependence, and an anti-social personality disorder."[5] *Id.* at 45. Further, Dr. Cesare stated that he saw no evidence of bipolar disorder. *Id.* Additionally, Dr. Cesare testified:

---

[5]Plaintiff notes that Dr. Cesare indicated that he only was provided with medical records designated 1E through 8E and 1F through 24F. ECF Dkt. #11 at 7 (citing Tr. at 43). The records provided to Dr. Cesare constitute the records pertaining to "Disability Related Development" and the "Medical Records," rather than records relating to the administrative process, disability determinations, jurisdictional documents, and documents relating to non-disability related development. *See* Tr. at Index1-Index3. Dr. Cesare was provided with all medical records regarding Plaintiff's alleged disability. Additionally, the ALJ summarized the findings of the agency doctors for Dr. Cesare at the hearing. Accordingly, Dr. Cesare was provided with all of the relevant medical evidence presented in this case.

I think in a history – in an individual with a history of such significant, high level, ongoing, longstanding abuse of addictive substances, mood altering substances, that it would be remiss to even formulate a reliable diagnosis of any kind of affective disorder in the presence of ongoing abuse of those kinds of substances. I do think there is – there are criteria that satisfy paragraph A, for 12.04, but I do believe that that [sic] is primarily the result of ongoing use, particularly of opioid narcotic pain medications at very high levels for a very long time. And I do think in its essence, the primary diagnostic condition here that needs to be addressed before others can be fully resolved is the polysubstance abuse, or polysubstance dependance rather.

*Id.* Continuing, Dr. Cesare indicated that he believed Listing 12.09 was also met, however, he added that "it would be pure speculation but I would say that if we could somehow magically remove the opiate addiction, and the abuse of other drugs, I would say no, there would not be enough evidence to say that any of the listings would be met." *Id.* at 45-46.

Next, Dr. Cesare testified that Plaintiff's personality disorder likely predated his substance abuse, noting that such a disorder is a "lifelong dysfunction interpersonal sphere," and that there was evidence in the record that Plaintiff showed early signs of severe personality disorder even during his childhood and teenage years insofar as he was "abusing animals, etcetera, getting into fights, and whatnot." Tr. at 47. Dr. Cesare stated that it would be difficult to tell if Plaintiff's drug use had caused permanent brain damage, but according to a March 2012 note from Plaintiff's treating physician, there were significant concerns about Plaintiff use of Percocet. *Id.* at 48. According to this treatment note, as stated by Dr. Cesare, Plaintiff described Percocet as his drug of choice to stabilize his mood, and was taking it "around the clock," which meant approximately every three hours. *Id.*

Based on Plaintiff's Percocet use, Dr. Cesare opined that there was a significant addiction and stated that he would not rule out the possibility that Plaintiff's addiction to narcotic pain medications had reached the point of severity where he was so addicted that he may actually inflict bodily harm upon himself in order to obtain more medication. *Id.* at 48-49. Dr. Cesare stated that Plaintiff's high level of addiction raised questions about the nature of the repeated abdominal injuries in the record and suggested that there may be at least one manifestation of malingering in order to obtain more Percocet or another narcotic pain medication. *Id.* at 49.

Accordingly, Dr. Cesare opined that physical damage secondary to addiction had "quite possibly" been demonstrated, and added that Plaintiff's "pattern of drug seeking behavior may have reached a point of desperation such that one becomes willing to inflict bodily damage in order to keep the prescriptions coming." *Id.* Subsequently in his testimony, Dr. Cesare noted that treatment notes from Crisis Intervention Center referenced drug seeking behavior, and that Plaintiff exhibited a pattern of refusals to follow recommended medical or mental health treatment, as evidenced by the fact that Plaintiff had fired several psychiatrists and multiple surgeons. *Id.* at 50-51.

Dr. Cesare testified that he suspected that Plaintiff would experience significant functional improvement "if we could magically remove the addiction and its effects upon [Plaintiff's] cognition, emotion, and functioning." Tr. at 51. Continuing, Dr. Cesare stated:

> Without any substance abuse behavior going on, I would suspect that you're looking in terms of activities of daily living, based on his personality disorder as the primary remaining diagnosis, what you would see is mild impairment in activities of daily living. I think you would still see marked impairment in social functioning. I think you would see mild impairment in persistence, concentration, and pace. And you would not see any instances of extended decompensation.

*Id.* Dr. Cesare indicated that it would not be possible to "remove" Plaintiff's disorder because addicts, once addicted, will always be addicted even if in recovery. *Id.* at 52. Next, Dr. Cesare testified that he did not believe Plaintiff's experienced Munchausen syndrome, as malingering better fit Plaintiff's behavior since it appeared that there was intent on behalf of Plaintiff to obtain narcotics and perhaps financial gain from gaining disability status. Tr. at 53.

Plaintiff's counsel then asked Dr. Cesare to clarify his testimony indicating that Plaintiff was noted to be exhibiting drug-seeking behavior, as well as minimizing his symptoms, as this testimony appeared to be inconsistent. Tr. at 53-54. Dr. Cesare stated:

> Unless one is refusing to follow recommended treatment, then one might tend to minimize symptoms, and essentially say, "oh, its not that bad, I don't need to be admitted." Particularly when one finds out that one's not going to get a prescription for a desired medication.

Tr. at 54. Continuing, Dr. Cesare testified that it was "very rare" for self-harm behaviors to reach the level of severity that he believed was being displayed by Plaintiff, and that this level of severity was designed specifically for an intensely desired object - ongoing narcotic pain

medication.  *Id.* at 55.  While Dr. Cesare did testify that this level of severity of self-mutilation was rare, he also indicated that "[i]t has been known to happen."  *Id.*

As to whether the self-mutilation necessitated the pain medications or the desire for pain medications precipitated the self-mutilation, Dr. Cesare indicated that he could not be entirely sure.  Tr. at 55.  Dr. Cesare noted that Plaintiff's apparent drug-seeking behavior began as early as February 2012 at Mercy Medical Center, with one of the first, if not the first, of a series of abdominal stab wounds.  *Id.*  According to Dr. Cesare, it could have been the case that eventually the wound initiated the need for medication, and that the medication, if taken long enough at high enough doses, then started to lose its impact on pain reduction.  *Id.* at 55-56.  Dr. Cesare explained that this process is called habituation, and that as the medication can eventually begin to perpetuate its own need, but noted that habituation rarely reaches the level of severity resulting in the kind of self-mutilation evidenced in the instant case.  *Id.* at 56.  Additionally, Dr. Cesare opined that the high level of severity of self-mutilation evidenced here may be partially the result of Plaintiff's underlying personality disorder.  *Id.*  Dr. Cesare then testified that there were indications in the record that Plaintiff had behavioral issues as a child, including: being expelled from school at age nine for fighting with teachers, siblings, and peers; and animal abuse, specifically, beating a cat with a baseball bat.  Tr. at 57.

The ALJ then asked Dr. Cesare about the ability of an individual with Plaintiff's limitations to work with others if the substance abuse was removed and said individual had: mild limitations in activities of daily living; marked limitations in social functioning; and mild limitations in concentration, persistence, and pace.  Tr. at 59.  Dr. Cesare testified that there would be a permanent functional limitations of marked proportions when it came to interpersonal relationships at work or otherwise.  *Id.*  Continuing, Dr. Cesare stated that Plaintiff had not been able to keep a job for more than "a few months" due to his inability to "get along with people," and that this marked impairment would present a barrier to any sustained gainful employment. *Id.*

Dr. Cesare testified that Plaintiff did not have a history of assaultive behavior, but was quick to anger.  Tr. at 59.  Next, Dr. Cesare indicated that Plaintiff should have minimal contact

with the public and co-workers, as well as remote supervision insofar as possible. *Id.* at 60. However, according to Dr. Cesare, Plaintiff's history and personality disorder suggested that it would only be a matter of time before some type of conflict would arise that would jeopardize his job. *Id.* Finally, Dr. Cesare stated that Plaintiff's work tenure would probably be expected to last in terms of months rather than years, even without Plaintiff's polysubstance abuse. *Id.*

The ALJ also examined a VE, who identified three prior jobs that constituted past relevant work: assembly line worker; tow motor operator; and cleaning worker. Tr. at 90-91. Continuing, the ALJ asked the VE whether there would be jobs available for a hypothetical individual that was unable to engage in sustained work activity for a full eight-hour workday on a regular and consistent basis, to which the VE responded in the negative. *Id.* at 86-87. Next, the ALJ posed a second hypothetical individual requiring that the combined sitting, standing, and walking time, regardless of allocation, totaled less than eight hours in a workday. *Id.* at 88. The VE indicated that there would be no competitive full-time employment for such an individual. *Id.* The ALJ then asked whether Plaintiff's past relevant work could be performed by an individual with the following limitations (mirroring the limitations ultimately contained in the ALJ's RFC finding): unskilled work; normal supervision; simple, routine work tasks; occasional superficial interaction with co-workers; and minimal interaction with the public. *Id.* at 93-94. The VE testified that such an individual could perform Plaintiff's past relevant work as an assembly line worker. *Id.* at 94. Additionally, upon questioning by the ALJ, the VE stated that an individual with these limitations could also perform work as a housekeeping cleaner, merchandise marketer, and hand packager. *Id.*

On questioning by Plaintiff's counsel regarding the open wound in Plaintiff's abdomen, the VE testified that the *Dictionary of Occupational Titles* did not address this situation, but that the impact of such a wound would be largely dependant on the employer. *Id.* at 96-97. Finally, the VE testified that for unskilled jobs an employer would likely only tolerate profanity towards a supervisor once per month not more than three times, but some employers would only tolerate the profanity twice. *Id.* at 97. The ALJ concluded the hearing after the VE was examined by Plaintiff's counsel. *Id.* at 98.

**B.      Medical Evidence**

On October 17, 2012, state-agency reviewing psychologist Kristen Haskins, Psy.D., opined that Plaintiff's primary issue was substance abuse. Tr. at 107. Dr. Haskins indicated that if sober, Plaintiff would still have some limitations based on his anxiety and bipolar disorder, however, he would retain the ability to perform at least simple, routine work tasks in an environment with no more than occasional superficial interaction with others. *Id.* On December 12, 2012 state-agency reviewing psychologist Karen Steiger, Psy.D., affirmed Dr. Haskins' opinion. Tr. at 119. In September 2013, Kirby Sweitzer, M.D., assessed Plaintiff's functional abilities, mostly focusing on his physical abilities, and opined that Plaintiff could not undertake even low-stress jobs. *Id.* at 1699. Later that month, Dr. Sweitzer dismissed Plaintiff from his practice for "complete non-compliance." *Id.* at 1795.

**III.      SUMMARY OF THE ALJ'S DECISION**

After holding the hearing on June 12, 2014, the ALJ issued a decision on November 13, 2014. Tr. at 10. The ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 31, 2012, the date Plaintiff's application for SSI was filed. *Id.* at 11. Continuing, the ALJ determined that Plaintiff had the following severe impairments: obesity; enterocutaneous fistula; status-post multiple abdominal procedures; intermittent explosive disorder; bipolar disorder; substance-abuse mood disorder; polysubstance dependence; anti-social personality disorder; major depressive disorder; mood disorder; and anxiety disorder. *Id.* The ALJ then determined that Plaintiff's impairments, including the substance use disorders, met Sections 12.04, 12.06, 12.08, and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 12. Further, the ALJ stated that if Plaintiff stopped the substance use, the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities, and therefore, Plaintiff would continue to have a severe impairment or combination of impairments. *Id.* at 13. Additionally, the ALJ determined that if Plaintiff stopped the substance abuse, he would not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ then found that if Plaintiff stopped the substance abuse, he would have the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except that he: may frequently balance, stoop, kneel, crawl, climb ramps and stairs; may occasionally crouch; must never climb ladders, ropes, or scaffolds; must avoid exposure to extremes of heat and workplace hazards, including unprotected heights and the operation of a motor vehicle; must avoid all exposure to extensive narcotic use; was limited to the performance of unskilled work, consisting of simple, routine tasks undertaken in a work setting requiring minimal contact with the public; and was limited to normal ("as opposed to close, over-the-shoulder") contact with supervisors and no more than occasional and superficial interaction with supervisors.  Tr. at 15-16.

Continuing, the ALJ stated that if Plaintiff stopped the substance abuse, his medically determinable impairments could reasonably be expected to produce the alleged symptoms, however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with the RFC assessment. *Id.* at 16.  The ALJ indicated that Plaintiff had made several inconsistent statements on issues central to the disposition of his claim.  Tr. at 19.  Specifically, the ALJ noted that in his function report, Plaintiff stated that he did not perform household chores or yard work, and had no hobbies; however, within the record and since the alleged onset date, Plaintiff reported cleaning his house and garage, landscaping, and working on cars as a hobby.  *Id.*  The ALJ also stated that in Plaintiff's disability report he indicated having only a tenth-grade education, however, the record showed that he had acquired a GED prior to filing the disability report.  *Id.*  Further, the ALJ stated that Plaintiff's report that he could only carry a few pounds was inconsistent with the records indicating that he was carrying an armload of firewood intended to stoke a wood burning furnace.  *Id.*  The ALJ also noted that Plaintiff attempted to explain this anomaly at the hearing by stating that the was only carrying a "couple of sticks for kindling" despite the record indicating otherwise.  *Id.*  Further, the ALJ stated that Plaintiff claimed that he had been sober for one year, yet a treatment note from two months prior to the hearing made a reference as to what will happen when Plaintiff's Percocet prescription ran out.  *Id.*

Moreover, the ALJ indicated that the record showed that Plaintiff engaged in persistent drug-seeking behavior as noted by emergency room physicians, who cited multiple opiate prescriptions issued by a variety of prescribers, some of which Plaintiff denied knowing or having visited. Tr. at 19. According to the ALJ, despite Plaintiff's denial of knowing or visiting multiple doctors to obtain prescriptions for opiates, he readily admitted to the overuse of opiates. *Id.* The ALJ found that "the subterfuge inherent in this behavior likewise renders questionable the reliability of the information provided by [Plaintiff]." *Id.*

Next, the ALJ determined that if Plaintiff stopped substance abuse he would be unable to perform past relevant work. Tr. at 21. The ALJ stated that Plaintiff was a younger individual on the date his application was filed, had at least a high school education and was able to communicate in English, and that the transferability of jobs skills was not material to the determination of disability because the Medical-Vocational Rules support a finding that Plaintiff was not disabled. *Id.* Further, the ALJ indicated that if Plaintiff stopped the substance abuse, and considering his age, education, work experience, and RFC, there would be a significant number of jobs in the national economy that Plaintiff could perform. *Id.* The ALJ found that Plaintiff substance use disorder was a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped the substance use. *Id.* at 22. Finally, the ALJ determined that because the substance use disorder was a contributing factor material to the determination of disability, Plaintiff had not been disabled within the meaning of the Social Security Act at any time from the date his application was filed through the date of the decision.[6] *Id.*

---

[6]The portions of the ALJ's decision regarding Dr. Cesare's opinion are central to the issues presented in this case. Accordingly, for the purpose of review by the Court, these portions of the ALJ's decision are addressed below in the analysis of the merits of this case.

## IV.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits.  These steps are:

1.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.    An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.    If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.    If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.    If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937(citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## VI.     LAW AND ANALYSIS

42 U.S.C. § 423(d)(2)(C) indicates that an individual shall not be considered to be disabled for purposes of disability insurance benefit payments if alcoholism or drug addiction would be a contributing factor material to Defendant's determination that the individual is disabled. 42 U.S.C. § 1382c(a)(3)(J) makes it clear that if alcoholism or drug addiction would be a contributing factor material to Defendant's determination that the individual is disabled, that individual shall not be considered to be disabled for the purpose of a SSI claim. If there is medical evidence of alcoholism or drug addiction, Defendant follows the following process, pursuant to 20 C.F.R. § 416.935(b):

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether [Defendant] would still find [a claimant] disabled if [the claimant] stopped using drugs or alcohol.
>
> (2) IF making this determination, we will evaluate which of [the claimant's] current physical and mental limitations, upon which [Defendant] based [the] current disability determination, would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling.

(i) If [Defendant] determine[s] that [the claimant's] remaining limitations would not be disabling, [Defendant] will find that [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability.

(ii) It [Defendant] determine[s] that [the claimant's] remaining limitations are disabling, [the claimant is] disabled independent of [the claimant's] drug addiction or alcoholism and [Defendant] will find that [the claimant's] drug addiction or alcoholism is not a contributing factor material to the determination of disability.

Plaintiff asserts that the ALJ's decision to discount a portion of Dr. Cesare's opinion is not supported by substantial evidence. ECF Dkt. #11 at 1, 14-25. According to Plaintiff, Dr. Cesare's testimony demonstrates that absent substance abuse, Plaintiff's severe impairments remained disabling. *Id.* at 14-15. Plaintiff asserts that the ALJ mischaracterized testimony from Dr. Cesare when choosing to discount a potion of his opinion, and thus the ALJ's findings are not supported by substantial evidence. *Id.* at 15. Based on these assertions, Plaintiff contends that the expert testimony presented at the hearing made it "clear that Plaintiff should have been found disabled at step five of the sequential evaluation process, notwithstanding sobriety." *Id.*

Continuing, Plaintiff indicates that the ALJ found Dr. Cesare's opinion worthy of considerable weight, with the exception being the portion of the opinion stating that Plaintiff's personality disorder "would likely cause [Plaintiff's] work persistence to be measured in months rather than years."[7] ECF Dkt. #11 at 17 (citing Tr. at 20). Plaintiff states that the ALJ ultimately

---

[7]Here, Plaintiff cites the following portions of the ALJ's decision:

Considerable weight was accorded the opinion of the impartial medical expert, Larry Cesare, Psy.D., that [Plaintiff] met listing 12.09 and that he would likely see significant functional improvement if the substance abuse was stopped. Dr. Cesare had the opportunity to examine [Plaintiff's] records, to which he cited copiously during his testimony, and was reporting within the bounds of his professional certifications and specialties...

Dr. Cesare noted that [Plaintiff] would likely have marked limitations in [social functioning], even if the drug abuse were stopped. However, in formulating this opinion, it is important to note that he relied, in part, on descriptions of symptoms and limitations not consistently reported in the record, such as cruelty to animals and corruption of a minor (but at age 19, with a young woman who would subsequently wed [Plaintiff] and bear his children). Dr. Cesare further noted that although [Plaintiff] would likely always have social limitations, he was not a danger to others, and could likely work in a setting with minimal contact with others and remote supervision. On balance, the cumulative impact of the evidentiary record suggests that [Plaintiff] would have no more than moderate difficulties in social function,

-13-

adopted Dr. Cesare's opinion, save for the portion indicating that Plaintiff would still have marked limitations in social functioning and that he would likely be unable to sustain employment for an appreciable time, even during periods of sobriety. *Id.*

Plaintiff submits the following three arguments to support his claim that the ALJ's reasons for discounting these portions of Dr. Cesare's are not supported by substantial evidence: (1) the ALJ did not provide an adequate explanation as to why Dr. Cesare's consideration of "two pieces of evidence" (later identified as evidence referencing to cruelty to animals and a charge for corruption of a minor) was inappropriate; (2) the ALJ was incorrect to suggest that the portions of Dr. Cesare's referencing to cruelty to animals and a charge for corruption of a minor were based largely on isolated reference in the record that were determined to be immaterial; and (3) even if Dr. Cesare impermissibly relied too heavily on certain isolated pieces of evidence, the ALJ nonetheless mischaracterized Dr. Cesare's opinion testimony to reach a finding that Plaintiff's level of social functioning during periods of sobriety would permit him to engage in sustained employment. Tr. at 17. Plaintiff contends that the evidence in this case weighs in favor of crediting the entirety of Dr. Cesare's opinion, as he was testifying within the bounds of his particular certifications and specialties, and had the opportunity to review Plaintiff's treatment records. *Id.* at 18. Further, Plaintiff avers that Dr. Cesare's testimony was supported by substantial evidence. *Id.*

As to his first and second arguments, Plaintiff asserts that the ALJ failed to provide an explanation as to why Dr. Cesare should have ignored isolated treatment records in order to provide "a worthy opinion," and that the closest the ALJ comes to an explanation is that these instances are not reported consistently in the record. ECF Dkt. #11 at 20. Plaintiff claims that the ALJ was "not in a position to discern what information was material to a psychological expert providing diagnoses and prognoses for [Plaintiff]." *Id.* Continuing, Plaintiff avers that the ALJ should not have substituted her opinion for that of a medical expert, and states:

---

were the substance abuse stopped.

ECF Dkt. #11 at 16 (citing Tr. at 13-14).

> Moreover, due to the posture of this case, it was entirely necessary for Dr. Cesare to consider the animal cruelty reports, as well as other information during Plaintiff's formative years, because that information predates his substance abuse.

*Id.* Plaintiff also claims that the ALJ never elaborated on how the fact that Plaintiff was nineteen when he was convicted for corruption of a child, who would subsequently wed Plaintiff and bear his children, mitigates against a finding Plaintiff's mental illness would cause marked limitations in social functioning. *Id.* at 21. Next, Plaintiff asserts that Dr. Cesare did not reference Plaintiff's charge for corruption of a minor when testifying at the hearing, and that the ALJ improperly imputed an underlying reason for Dr. Cesare's opinion that was not supported by the record. ECF Dkt. #11 at 21. According to Plaintiff, this necessarily results in a decision that was not supported by substantial evidence and is proper grounds to remand this case. *Id.*

Plaintiff also asserts that it is clear that Dr. Cesare believed that Plaintiff's personality disorder was present long before he abused drugs, citing Dr. Cesare's testimony indicating that Plaintiff: showed early signs of personality disorder during his childhood and teen years by "getting into trouble, [] abusing animals, etcetera, getting in fights and whatnot"; had a rough childhood, and was expelled from school at age nine for fighting; had a personality disorder that probably preceded his addiction; and would have permanent functional limitations of marked proportions when it came to interpersonal relationships, primarily in interaction with supervisors or others in authority positions. ECF Dkt. #11 at 22-23 (citing Tr. at 47, 57, 59).

As to his third argument, that the ALJ mischaracterized Dr. Cesare's testimony, Plaintiff cites the following portion of Dr. Cesare's testimony:

> [upon questioning by the ALJ]
>
> Q:    And so would it be, you know, reasonable like at least with – probably no interaction I guess with the public, probably some more superficial interaction I guess with the public, or with co-workers? Would perhaps a normal supervision situation might be like no over the shoulder supervision, or –
>
> A:    Yes, I think minimal contact with the public, minimal contact with co-workers, remote supervision insofar as that's possible would open up the possibility of employment but again I believe that with his history and with the personality disorder, it would be only a matter of time before some type of conflict would arise that would jeopardize his job –

ECF Dkt. #11 at 23 (citing Tr. at 60).[8] Plaintiff claims that this testimony "is materially different from the ALJ claims it to be in the decision." *Id.* at 24. Further, Plaintiff avers that while Dr. Cesare did note "there's no history, at least in the record, of assaultive behavior," which the ALJ relied on this when determining the Plaintiff was not a danger to others, Dr. Cesare was quick to point out that he did think that Plaintiff would be verbally assaultive. *Id.* (citing Tr. at 59). Plaintiff asserts that the ALJ ignored Dr. Cesare's opinion that he would be verbally assaultive in the workplace. *Id.*

Finally, Plaintiff claims that the ALJ ignored Dr. Cesare's opinion that, even with complete sobriety, Plaintiff would remain incapable of performing sustained full-time employment. ECF Dkt. #11 at 24. Specifically, Plaintiff points to testimony from Dr. Cesare in which he states:

> I believe that [Plaintiff's] tenure could be expected to, in any job even with those conditions met, would probably be expected to last in terms of months rather than years at best. And that again is without the impact of the... polysubstance dependence.

*Id.* (citing Tr. at 60). Plaintiff further states that a review of Plaintiff's work history suggests that his employment record comports with Dr. Cesare's assessment. *Id.* at 25 (citing Tr. at 183-88).

Defendant contends that the ALJ specifically acknowledged and thoroughly addressed the applicable regulations in her decision, and recognized that Plaintiff exhibited certain severe impairments that limited his ability to perform basic work activities, even in the event his substance abuse stopped. ECF Dkt. #14 at 12. Further, Defendant indicates that the ALJ determined that the totality of the record failed to demonstrate that Plaintiff's condition caused work-preclusive limitations in the event Plaintiff stopped the use of substances. *Id.* Therefore, according to Defendant, the ALJ concluded that Plaintiff's substance-abuse disorder was a contributing factor material to the determination of disability and that Plaintiff was not entitled to benefits under the Social Security Act. *Id.*

---

[8]Plaintiff's quotation of the question posed to Dr. Cesare by the ALJ misquotes the question. *See* Tr. at 60; ECF Dkt. #11 at 23. The correct quotation is provided herein.

Next, Defendant properly asserts that, as a general matter, the ALJ alone is charged with analyzing the longitudinal record and synthesizing her findings in an RFC evaluation. ECF Dkt. #14 at 12-13; *see* 20 C.F.R. § 416.927(d)(1)-(3). Defendant avers that even an ALJ's accordance of great weight to the opinion of a medical source does not obligate the ALJ to transcribe verbatim the functional limitations advanced by that individual. *Id.* at 13 (citing *Williams v. Comm'r of Soc. Sec.*, No. 1:10CV2583, 2012 WL 1066778, at *5 (N.D. Ohio Mar. 28, 2012)). Continuing, Defendant argues that a physician's opinion that is unsupported by clinical evidence or inconsistent with other evidence should be accorded less weight. *Id.* (citing 20 C.F.R. § 416.927(c)(3)-(4)).

With respect to Plaintiff's social limitations, Defendant states that the ALJ reasonably concluded that Plaintiff would experience only moderate social limitations in the event his substance abuse stopped, as evidenced by the ALJ's indication that Plaintiff lived with his fiancée. ECF Dkt. #14 (citing Tr. at 14). Defendant also notes that ALJ referenced in his step-three analysis the opinons of Dr. Haskins and Dr. Steiger, who both opined, after their own independent reviews of the medical evidence, that while Plaintiff experienced marked limitations in social functioning while abusing substances, Plaintiff, if sober, would retain some limitations but could perform simple work in an environment with occasional, superficial interactions with others. *Id.*

As for Plaintiff's contention that the ALJ improperly discounted Dr. Cesare's opinion for referencing behavior including animal cruelty at age fourteen and corruption of a minor at age nineteen, Defendant contends that it was not the ALJ's point that Dr. Cesare improperly reviewed these records, but rather that he relied on these decades-old instances of behavioral extremes in light of other evidence. ECF Dkt. #14 at 15. Regarding Plaintiff's assertion that the ALJ mischaracterized Dr. Cesare's opinion, Defendant maintains that the ALJ asked whether it was reasonable for Plaintiff to work at a job with limited interaction with the public, co-workers, and supervisors, and Dr. Cesare responded in the affirmative. *Id.* at 15-16. Defendant then states that Dr. Cesare testified that minimum contact with other people would "open up the possibility of employment" for Plaintiff, albeit subject to sharp potential limitations on the

-17-

duration of Plaintiff's employment. *Id.* at 16. Based on these statements, Defendant asserts that the ALJ did not mischaracterize Dr. Cesare's testimony. *Id.*

Insofar as Plaintiff claims that his work history supports Dr. Cesare's opinion that he could only work for a period of months, rather than years, Defendant asserts that the ALJ agreed that Plaintiff could not return to his old jobs and expressly agreed at step four that Plaintiff was incapable of returning to his past relevant work, even if he stopped using substances. ECF Dkt. #14 at 17 (citing Tr. at 21). Defendant indicates that, based on the evidence, the ALJ simply declined to adopt the portion of Dr. Cesare's opinion providing that Plaintiff could not undertake any job on a long-term basis. *Id.* at 17-18. Continuing, Defendant avers that the regulations are clear that an opinion, divorced from specific functional limitations, and which merely addresses a claimant's capacity to undertake work, implicates an issue expressly reserved for Defendant and that no special significance should be accorded any source with respect to such an opinion. *Id.* (citing 20 C.F.R. § 416.927(d)(1), (3)). According to Defendant, the ALJ simply was not obligated to adopt Dr. Cesare's opinion regarding the duration of potential jobs. *Id.*

Plaintiff's arguments are without merit. As an initial matter, neither party asserts that Plaintiff is not addicted to drugs, meaning that the question is whether Plaintiff would be considered disabled if he stopped using drugs. *See* 20 C.F.R. § 416.935(b). Plaintiff first asserts that the ALJ did not provide an adequate explanation as to why Dr. Cesare's consideration of "two pieces of evidence" was inappropriate.[9] However, the ALJ did not simply claim that consideration of these two pieces of evidence was inappropriate. Instead, the ALJ was noting that Dr. Cesare relied on "symptoms and limitations not consistently reported in the record, such as cruelty to animals and corruption of a minor."[10] Tr. at 18. It is clear that the ALJ did not simply find consideration of this evidence inappropriate, but rather was concerned that Dr.

---

[9]The "two pieces of evidence" relate to cruelty to animals and corruption of a minor. *See* ECF Dkt. #11 at 17.

[10]The undersigned recognizes that the ALJ's reference to corruption of a child here is problematic for other reasons, as discussed below.

Cesare's opinion was overly reliant on several specific portions of the record that may not have accurately reflected Plaintiff's limitations during the period of alleged disability.

The second argument posed by Plaintiff is that the ALJ was incorrect to suggest that Dr. Cesare's opinion "was founded largely upon isolated references in the record that [the ALJ] determined to be immaterial." ECF Dkt. #11 at 17. Despite Plaintiff's contention, it does not appear from the opinion that the ALJ determined that Dr. Cesare's opinion was founded "largely upon isolated references in the record." *See* Tr. at 14. In fact, the ALJ accorded considerable weight to Dr. Cesare's opinion and, based on the opinion, determined that Plaintiff's RFC was actually more limited than as opined by Dr. Haskins and Dr. Steiger, the state-agency reviewing doctors. *See Id.* at 20. Moreover, the ALJ did not indicate that she believed Dr. Cesare's opinion to be largely based on isolated references, but instead that the opinion did not present a totally accurate description of Plaintiff's social limitations as it was based in part on events that occurred in Plaintiff's youth that the ALJ did not believe to be good indicators of Plaintiff's social limitations decades after the events. *See id.* at 14. In fact, a review of Dr. Cesare's hearing testimony reveals that the discussion of Plaintiff's personality disorder focused on events that occurred in Plaintiff's childhood, including the instance of animal cruelty. *Id.* at 57.

Continuing, Plaintiff's third argument is based on the contention that the ALJ erred in discounting the weight accorded to Dr. Cesare's opinion because the ALJ did not accept the portion of the opinion in which Dr. Cesare stated that Plaintiff could only work for a period of months, rather than years, since Dr. Cesare relied on descriptions of symptoms and limitations not consistently reported in the record. Specifically, the portion of the ALJ's decision that forms the basis of Plaintiff's assertions reads:

> However, in formulating this opinion, it is important to note that [Dr. Cesare] relied, in part, on descriptions of symptoms and limitations not consistently reported in the record, such as cruelty to animals and corruption of a minor (but at age 19, with a young woman who would subsequently wed [Plaintiff] and bear his children).

ECF Dkt. #11 at 18-23. While Dr. Cesare explicitly discussed Plaintiff's cruelty to animals in the past at the hearing, Dr. Cesare did not reference Plaintiff's charge for corruption of a minor when discussing his social limitations. *See* Tr. at 40-61.

According to Plaintiff, the ALJ's indication that one of the reasons he discounted Dr. Cesare's opinion was his reliance on Plaintiff's charge for corruption of a minor, despite Dr. Cesare never explicitly stating that he considered this charge, constitutes reversible error. ECF Dkt. #11 at 21-22. Defendant contends that the ALJ was not stating that Dr. Cesare erred by reviewing these records or by citing the records in his testimony, but rather that the ALJ reasonably found that Dr. Cesare erred when relying on decades-old instances of behavioral extremes in light of the other evidence cited by the ALJ. ECF Dkt. #14 at 15. Plaintiff claims that the ALJ erred when she factored Dr. Cesare's consideration of Plaintiff's charge for corruption of a child when it was not clear that Dr. Cesare considered the corruption of a child offense to be part of the reason why Plaintiff could only work for a period of a few months at a time. Continuing, Plaintiff asserts that the ALJ imputed an underlying reason for Dr. Cesare's opinion that was not substantiated by the record, and then improperly used this reason as a basis to discredit his opinion. ECF Dkt. #11 at 21. Plaintiff cites case law he believes supports his contention that the ALJ's mention of the corruption of a child charge when stating why she was discounting Dr. Cesare's opinion warrants remand of this case.

First, Plaintiff cites *Elson v. Comm'r of Soc. Sec.*, No. 3:11CV183, 2011 WL 7418598, (N.D. Ohio Dec. 22, 2011). In *Elson*, the ALJ supported the decision by citing medical expert testimonial evidence indicating that the medical expert determined that none of the claimant's impairments met or medically equaled the criteria of any listed impairment. *Id.* at 23. The Court determined that a review of the hearing testimony revealed no such statement by the medical expert. *Id.* Since the ALJ relied on this nonexistent hearing testimony, in part, the Court held:

> Because the ALJ expressly asserted that his Listed Impairment determination was based on several factors, <u>including</u> [the nonexistent hearing testimony], this Court must find that the ALJ's determination that [the claimant] did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments... was not based on substantial evidence.

*Id.* at *13. Next, Plaintiff cites *Dimmings v. Comm'r of Soc. Sec.*, No. 1:13CV146, 2014 WL 296866, at *9 (N.D. Ohio Jan. 27, 2014), in which the Court found:

Here, the ALJ made the decision to call a Medical Expert. If the ALJ determined during or after the hearing that the ME chosen by him was not qualified or was ill prepared because of the late receipt of medical records, the ALJ could have postponed the hearing or selected a more suitable Medical Expert. He did not. Instead, he discounted the Medical Expert's opinion for reasons partially within his control and thereafter, in essence, interpreted medical evidence without the aid of a Medical Expert even though he had originally made the determination that a Medical Expert was necessary. Moreover, as discussed, the ALJ's medical equivalency determination included within his RFC determination is inconsistent with his own sedentary RFC finding. Accordingly, the Court finds that reversal and remand is warranted for further analysis of [the claimant's] impairment under Step Three and, to the extent necessary, reassessment of [the claimant's] impairment under Steps Four and Five.

Additionally, Plaintiff cites *White v. Comm'r of Soc. Sec.*, 312 Fed.Appx. 779, 787-88 (6th Cir. 2009), in which the Sixth Circuit held:

Although the ALJ did not err in finding that [the claimant's] mental impairment was not severe, the ALJ gave no explanation for totally discounting the objective evidence of [the claimant's] mental impairment in determining [the claimant's] RFC. Once one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe. The Commissioner correctly states that Dr. McDowell did not note any limitations caused by [the claimant's] mental impairment and that the ALJ was therefore not required to include the GAF finding in the RFC. The ALJ's total discounting of [the claimant's] mental impairments, however, is not supported by substantial evidence, because the ALJ mischaracterizes the evidence and misstates Dr. Basch's reasons for prescribing anti-depressants. When first prescribing them, Dr. Basch stated "[the claimant's] is becoming depressed and discouraged. His wife concurs.... The chronic pain plus what appears to be an impending disability is weighing heavily upon him." At a later visit, Dr. Basch increased the dosage because [the claimant's] "feels overwhelmingly depressed because of the combination of the chronic pain and inability to sleep because of pain." Contrary to the ALJ's statement, the anti-depressants were not prescribed for "pain relief and sleep," but because the pain and lack of sleep were causing depression. Because the ALJ does not accurately state the evidence used to support his finding, his total discounting of the mental impairment is not supported by substantial evidence.

Plaintiff's reliance on *Dimmings* and *White* is misplaced. In *Dimmings*, the ALJ recognized that a medical expert was necessary, but then discounted the medical expert's opinion for reasons partially under his control and, thereafter, interpreted the medical evidence without the aid of the medical expert even though he had already determined that the medical expert was necessary. *Dimmings*, 2014 WL 296866, at *9. The ALJ's own medical equivalency was then inconsistent with his own sedentary RFC finding. *Id.* Additionally, the Court found that the ALJ had failed in his duty to develop a full and fair record. *Id.* at *7. The ALJ in the instant case referenced an existing medical record that had been provided to Dr. Cesare, and to

which Dr. Cesare testified that he had reviewed.[11]  *See* Tr. at 41, 43.  In the instant case, the ALJ did not discount the opinion of the medical expert for reasons under his control like the ALJ in *Dimmings*, who allowed testimony from a medical expert who was not qualified or unprepared, chose not to postpone the hearing, and interpreted medical evidence without the assistance of the medical expert.  Simply put, the ALJ in the instant case did not act in a manner to prevent Plaintiff from a full and fair hearing in the same manner as the ALJ in *Dimmings*.

*White* is even less analogous to this case than *Dimmings*.  In *White*, the ALJ gave no explanation for totally discounting the objective evidence of the claimant's mental impairment when making his RFC determinations, and made statements relating to the claimant's mental impairments that were not supported by the objective evidence.  *See* 312 Fed.Appx. at 787-88.  Plaintiff's contention in the instant case has nothing to do with how the ALJ handled the objective evidence.  In fact, the ALJ in the instant case provided a thorough recitation of the evidence and explained how the objective evidence factored into her decisions at each applicable step of the sequential evaluation.  *See* Tr. at 18-25.  The issue raised by Plaintiff involves the ALJ's handling of subjective testimony from Dr. Cesare stating his opinion regarding Plaintiff's limitations - there is no claim that the ALJ improperly discounted objective medical evidence.

More analogous to the case at hand, the remand in *Elson* was the result of the ALJ making his determination, in part, that Plaintiff did not meet a listed impairment based on testimonial evidence that did not exist.  *Elson*, No. 3:11CV183, at *13.  In *Elson*, the Court remanded the case, in part, based on following:

> At step three of the five-step sequential analysis, [the ALJ] determined that [the claimant] does not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Pt. 404, Subpt. P., Appx. 1.  In support of this determination the ALJ wrote:
>
> > [The medical expert] who testified at the hearing reviewed the medical evidence and determined that none of [the claimant's] impairments, either

---

[11]Dr. Cesare testified that he had read the file and that he had been given documents 1E through 8E and 1F through 24F.  Tr. at 41, 43.  The reference to Plaintiff's corruption of a child charge is contained in document 12F.  *Id.* at 1659.

> singly or in combination, medically met or equaled the criteria of any listed impairments during the requested period.
>
> Review of [the medical expert's] June 26, 2009 hearing testimony reveals no such statement by [the medical expert].

*Id.* In the instant case, the ALJ cited a brief portion of nonexistent testimonial evidence when explaining why he was discounting the weight accorded to Dr. Cesare's opinion that Plaintiff could only work for a period lasting months rather than years. While both this case and *Elson* feature ALJs that cite to testimonial evidence that was nonexistence, a distinction is present. In this case, the testimonial evidence that is cited by the ALJ relates to a finding regarding Plaintiff's ability to work, rather than his medical impairments. In *Elson*, the ALJ relied on non-existent testimony, in part, when determining that the claimant did not meet a listed impairment. Here, the ALJ cites to nonexistent testimony, in part, when determining the weight to accord to Dr. Cesare's opinion that Plaintiff could only work for periods of months, rather than years.

The regulations are clear that an opinion divorced from specific functional limitations, which merely addresses a claimant's capacity to undertake work, implicates an issue expressly reserved for Defendant. 20 C.F.R. § 416.927(d)(1). 20 C.F.R. § 416.927(d)(1) states:

> [Defendant] review[s] all of the medical findings and other evidence that support a medical source's statement that [the claimant] is disabled. A statement by a medical source that [the claimant is] "disabled" or "unable to work" does not mean that [Defendant] will determine that [the claimant is] disabled.

Additionally, "no special significance" is to be given to source with respect to such an opinion. *Id.* at (3). Accordingly, the ALJ was not obligated to adopt Dr. Cesare's opinion that Plaintiff could only work for a period of months rather than years since it is an opinion regarding Plaintiff's ability to work. Further, Dr. Cesare is not a treating medical source, so the ALJ was not required to give the opinion controlling weight, or provide "good reasons" for assigning lesser weight. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

It is clear from the ALJ's opinion that in citing Plaintiff's cruelty to animals and corruption of a minor, the ALJ was attempting to state that Dr. Cesare's opinion was based, in part, on events that she found to be of lesser significance for the purpose of determining Plaintiff's social limitations for the period of alleged disability. *See* Tr. at 14. The ALJ cited

these two instances as examples of the types of symptoms and limitations that were not consistently reported in the record, rather than as the only two descriptions for which Dr. Cesare's opinion was discounted. *See id.* As such, Dr. Cesare's reference to animal cruelty many years in the past is a valid concern presented by the ALJ. Dr. Cesare indicated that he reviewed all of the medical evidence, which contained the discussions of animal cruelty and childhood problems discussed in his hearing testimony.[12] It is in these same records where Plaintiff's charge for corruption of a child is mentioned. Accordingly, while Dr. Cesare did not testify that the charge of child corruption was part of the formulation of his opinion, he did testify that he reviewed the records containing the information on the charge.[13] *See* Tr. at 14.

In sum, the overwhelming majority of the evidence supports the ALJ's determination that Plaintiff's substance use disorder was a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped the substance use. Plaintiff now asks that the Court remand this case mainly on the basis of the ALJ's brief indication that Dr. Cesare relied, in part, upon a piece of evidence that had been reviewed, but not mentioned, by Dr. Cesare during the hearing. The ALJ's decision was thorough and provided a detailed analysis of the medical evidence, treatment opinions, and Plaintiff's credibility. Moreover, the conclusions reached by the ALJ were all supported by the record and other evidence in this case. For these reasons, the undersigned recommends that the Court finds that the ALJ's decision is supported by substantial evidence and dismiss Plaintiff's case in its entirety with prejudice.

## VII.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the

---

[12]*See* n.3, n.11, *supra.*

[13]Plaintiff also briefly asserts that the earning summaries for 1998 to 2013 support Dr. Cesare's opinion. ECF Dkt. #11 at 25-25 (citing Tr. at 183-88). These earning summaries do not provide enough details on the circumstances surrounding each job and Plaintiff's reasons for remaining at the job or quitting the job. While it does appear that Plaintiff has held numerous jobs, the earning summaries alone, absent a sufficient attempt by Plaintiff to further explain the earnings summaries, cannot be said to support Dr. Cesare's opinion.

ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.


Date: April 19, 2017                    ___/s/George J. Limbert_____
                                        GEORGE J. LIMBERT
                                        UNITED STATES MAGISTRATE JUDGE


        ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).